UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DOMINICK DEPALMA and JOSEPH LESZCZYNSKI, Individually and on Behalf of All Other Similarly Situated Current and Former Employees,<br><br>Plaintiffs,<br><br>v.<br><br>THE SCOTTS COMPANY LLC,<br><br>Defendants. | Civ. No. 13-7740 (KM) (JAD)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

This matter comes before the Court on the objection of defendant The Scotts Company LLC ("Scotts") to Magistrate Judge Dickson's August 4, 2016 Opinion and Order (ECF Nos. 107, 109, hereinafter "Dickson Op." and "Dickson Order") granting the motion brought by plaintiffs Dominick DePalma and Joseph Leszczynski individually and on behalf of all other similarly situated current and former employees to equitably toll the statute of limitations of the Fair Labor Standards Act ("FLSA") for a putative class of opt-in plaintiffs. Because tolling is an appropriate equitable remedy under the circumstances of this case, I will affirm Judge Dickson's Order and adopt his well-reasoned Opinion.

**I.   BACKGROUND**

I write for the parties and so assume familiarity with my March 31, 2016 Opinion granting conditional collective action certification, which discussed plaintiffs' allegations and the procedural history as it then existed.

1

(ECF No. 66) I highlight here the facts that are pertinent to the resolution of this appeal.

Plaintiffs brought their complaint on December 20, 2013. (ECF No. 1) It was initially assigned to Judge Dennis M. Cavanaugh and Magistrate Judge James B. Clark. An initial scheduling conference was set for May 5, 2014, but was rescheduled to August 14, 2014 at the request of Scotts. (ECF Nos. 22, 24). In April 2014, upon Judge Cavanaugh's retirement, the case was reassigned to me, and to Magistrate Judge Michael Hammer. (ECF No. 25). The case was reassigned from Judge Hammer to Magistrate Judge Dickson, before whom the initial conference was held as planned in August 2014. (ECF No. 31)

Litigation began in earnest, starting with discovery conducted for purposes of conditional certification. (ECF No. 30) On March 20, 2015, plaintiffs filed a motion for conditional certification and notice (ECF No. 43). The motion was fully briefed by May 11, 2015. (ECF No. 52) Because the Court could not access a number of the exhibits plaintiffs had filed under seal, that motion, its accompanying declarations, and a number of exhibits were refiled on August 28, 2015. (ECF Nos. 53-56)

On January 13, 2016, nine months after the motion for conditional certification and notice had filed, and four months since the refiling of plaintiffs' papers, plaintiffs filed a motion to equitably toll the statute of limitations for the putative class of potential opt-in plaintiffs. (ECF No. 62) On March 31, 2016, I granted the conditional certification motion (ECF Nos. 66-67). About two weeks later, I approved the form of the parties' proposed FLSA notice. (ECF No. 70)

On August 4, 2016, Judge Dickson granted plaintiffs' equitable tolling motion and ordered that the statute of limitations for the collective action opt-ins be tolled from March 20, 2015, to April 11, 2016—*i.e.*, from the date the conditional certification motion was filed until ten days after I granted

2

it. (ECF No. 109)[1] Scotts timely appealed the Dickson Order on August 18, 2016. (ECF No. 110).

Since notice was sent to members of the putative class of opt-in plaintiffs, 101 individuals have joined this case. (ECF No. 116)

## II. THE FLSA

An FLSA claim must be commenced within two years after accrual (three years in the case of a willful violation). 29 U.S.C. § 255(a).[2] A claim for unpaid overtime accrues each and every time the employer fails to pay the required compensation for any workweek at the regular pay day for the period in which the workweek ends. 29 C.F.R. § 790.21(b); *Henchy v. City of Absecon*, 148 F. Supp. 2d 435, 437 (D.N.J. 2001). A named plaintiff's claim is deemed commenced on the date that the collective action complaint is filed. An opt-in plaintiff's claim, by contrast, is commenced only later, when her written consent is filed. *Id.* § 256(a)-(b). That delay potentially creates a trap for opt-in plaintiffs: an opt-in's FLSA claim may become untimely prior to her having received court-authorized notice, because the filing of the collective action complaint has no tolling effect as to her claims.[3] Opt-in plaintiffs' FLSA claims are therefore particularly vulnerable to the running of the statute of limitations

---

[1]   The tenth day fell on a Sunday, so the period carried over to Monday. *See* Fed. R. Civ. P. 6(a).

[2]   "Any action commenced . . . under the Fair Labor Standards Act . . . may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."

[3]   As I explained in my conditional certification opinion, courts in the Third Circuit use a two-step certification process to determine whether employees are "similarly-situated" for purposes of a collective action. At the first stage—in which the decision to certify and the decision to notify potential collective action members are one and the same, see *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 193 (3d Cir. 2011)—a plaintiff need only meet the "fairly lenient standard" of a "modest factual showing" that the employees in the proposed putative class are similarly situated. *Camesi v. Univ. of Pittsburgh Med. Cntr.*, 729 F.3d 239, 243 (3d Cir. 2013). After notice has been sent to all the potential opt-in plaintiffs, plaintiffs carry a heavier burden at the second (and final) certification stage. (ECF No. 66, p. 3-4)

while motions for conditional certification and notice remain undecided. Hence the application here for equitable tolling of opt-ins' claims.

## III. DISCUSSION

### A. Equitable Tolling: Standards

Ordinarily, the statute of limitations begins to run "once [the] events satisfying all elements of a cause of action have taken place." *William A. Graham Co. v. Haughey*, 646 F.3d 128, 147 (3d Cir. 2011). "There exist, however, various statutory and judge-made rules that operate to toll the limitations period—that is, 'to stop its running'; 'to abate it'; or '[t]o suspend or interrupt' it." *Id.* (internal citations omitted). *Id.* One of those judge-made rules, equitable tolling, "can rescue a claim otherwise barred as untimely by a statute of limitations when a plaintiff has 'been prevented from filing in a timely manner due to sufficiently inequitable circumstances.'" *Santos v. United States*, 559 F.3d 189, 198 (3d Cir. 2009) (citing *Seitzinger v. Reading Hosp. & Med. Ctr.* 165 F.3d 236, 240 (3d Cir. 1999).

Under the usual rules of equitable tolling, a plaintiff must establish two elements: (1) "that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuilielmo*, 554 U.S. 408. 418 (2005). While equitable tolling is an "extraordinary" remedy to be used "only sparingly," *Santos,* at 197, tolling relief has been found proper in a number of situations. *See, e.g., Seitzinger*, 165 F.3d at 242 (tolling may be appropriate in some instances of attorney neglect, "when a claimant received inadequate notice of her right to file suit, [or] where a motion for appointment of counsel is pending").

There are three classic, but nonexclusive, scenarios in which the inequity of enforcing a statute of limitations against an unwary plaintiff is so obvious that tolling may be appropriate: "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or

4

her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Id.* (quoting *Hedges v. United*, 404 F.3d 744, 751 (3d Cir. 2005)); *see also Santos*, 559 F.3d at 197; *Jones v. Morton*, 195 F.3d 153, 159 (3d Cir. 1999). Equity, however, is flexible, and the list is therefore not exhaustive. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994) ("We have instructed that there are *three principal, though not exclusive, situations in which equitable tolling may be appropriate*: [reciting the three situations].") (emphasis added). Whether a statute of limitations should be tolled requires a case-specific inquiry into what is fair and in the interests of justice. *See Miller v. New Jersey State Dep't of Corr.*, 145 F.3d 616, 618 (3d Cir. 1988) (equitable tolling is proper when "the principles of equity would make [the] rigid application [of a limitation period] unfair") (alterations in original); *Jones*, 195 F.3d at 159 ("In the final analysis . . . 'a statute of limitations should be tolled in the rare situation where equitable tolling is demanded by sound legal principles as well as the interests of justice.'") (quoting *United States v. Midgley*, 142 F.3d 174, 179 (3d Cir. 1998).

### B.  Analysis

The District Court will reverse a Magistrate Judge's decision on a non-dispositive motion only if it is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A). Scotts asserts that Judge Dickson's opinion is erroneous for three reasons: (1) it fails to account for the FLSA's statutory scheme; (2) improperly relies on *Ornelas v. Hooper Holmes*, No. 12-cv-3106, 2014 WL 7051868 (D.N.J. Dec. 12, 2014), both substantively and as to the issue of due diligence; and (3) tolled the statute of limitations for an arbitrary period of time. On all scores, I disagree.

#### 1.  FLSA's Statutory Scheme

Scotts' principal argument appears to be that tolling the statute of limitations for potential opt-in plaintiffs is not permitted at all, because it is contrary to the text and policy of the FLSA. In Scotts' view, the gap between

5

when a named plaintiff and an opt-in plaintiff's claims commence is not a bug but a feature: "Congress unambiguously chose to afford FLSA defendants . . . the benefit of elapsing time in the routine progression of litigation." (Def. Br. 5)

There is no doubt that Congress did not want the claims of potential opt-ins to be automatically tolled upon the filing of a collective action complaint. But the question here is different: did Congress intend to foreclose courts from equitably tolling the statute of limitations where the circumstances warrant it? The answer to that question is not provided by the FLSA's text, and Scotts cites no authority for the proposition that the answer might be 'yes.' The sole case on which it relies, *Woodward v. FedEx Freight E., Inc.*, indicates only that Congress created the opt-in structure to end an "'unwholesome' practice" that had developed following a 1946 interpretation of "working time" by the Supreme Court, 250 F.R.D. 178, 184-86 (M.D. Pa. 2008). At the time, the FLSA apparently

> allow[ed] an individual to come into court alleging that he is suing on behalf of 10,000 persons and actually not hav[e] a solitary person behind him, and then later on have 10,000 men join in the suit, which was not brought in good faith, was not brought by a party in interest, and was not brought *with the actual consent or agency of the individuals for whom an ostensible plaintiff filed the suit.*

*Id.* at 185 (quoting *Ellis v. Edward D. Jones & Co. L.P.*, 257 F. Supp. 439, 447 (E.D. Pa. 2007) (quoting 93 Cong. Rec. 2, 2182 (1947)) (emphasis in original). That unwholesome practice is distinct from anything that occurred here. Its elimination says little about whether Congress intended to strip opt-in plaintiffs of FLSA claims of which they remained unaware because of circumstances beyond their control.[4]

---

4   If Scotts were right that Congress intended to prevent courts from reading equitable tolling into Section 255(a), one might think Congress would have made the provision a statute of repose rather than one of limitation. *See CTS Corp. v. Waldburger*, 134 S. Ct. 2175, 2183 (2014) ("One central distinction between statutes of limitations and statutes of repose underscores their differing purposes. Statutes of

6

The most that can be said is that Congress did not intend to provide automatic, Rule 23-style, class-wide tolling at the moment the collective action complaint is filed. It is unclear that Congress considered the question of equitable tolling, upon a proper showing, at all. Because equitable tolling, a principle of widespread and general application, was not called into question, it makes sense that it would apply here, as it does elsewhere.

In that context, Judge Dickson clearly did not "fail to account" for the FLSA's staggered commencement and its two (or three) year statute of limitations. (Def. Br. 1, 4) To the contrary, he detailed the FLSA's requirements (and relevant equitable tolling principles) in two pages of cogent exegesis. (Dickson Op. 2-4) In ruling that the opt-in plaintiffs should not be penalized for the delay between the filing of the conditional motion for certification/notice and the Court's grant of that motion, Judge Dickson was in step with a number of courts across the country that have considered the issue.[5] In short,

---

limitations, but not statues of repose, are subject to equitable tolling . . . .") (internal citations and quotations omitted); *see also Chao v. Va. DOT*, 157 F. Supp. 2d 681, 700 (E.D. Va. 2001) ("The provision at issue, 29 U.S.C. § 255, is a statute of limitations.") (citing *Hodgson v. Humphries*, 454 F.2d 1279, 1283-84 (10th Cir. 1972); *Henchy*, 148 F. Supp. 2d at 438. Scotts does not suggest that the FLSA statute of limitations is jurisdictional.

5 *E.g., Iriate v. Café 71, Inc.*, Civ. No. 15-3227, 2015 U.S. Dist. LEXIS 166945, at *17-18 (S.D.N.Y. Dec. 10, 2015); *Jackson v. Bloomberg L.P.*, 298 F.R.D. 152, 170-71 (S.D.N.Y. 2014); *Orenelas v. Hooper Holmes, Inc.*, 2014 U.S. Dist. LEXIS 1729903, at *16-17 (D.N.J. August 1, 2014); *Bergman v. Kindred Healthcare, Inc.*, 949 F. Supp. 2d 852, 860 (N.D. Ill. 2013) (collecting cases); *Struck v. PNC Bank N.A.*, 931 F. Supp. 2d 842, 846-89 (S.D. Ohio 2013); *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012); *Gorey v. Manheim Servs. Corp.*, Civ. No. 7:10-1132, 2010 U.S. Dist. LEXIS 141868, at *15-16 (S.D.N.Y. Nov. 10, 2010); *Stickle v. SCI Western Mkt. Support Ctr., L.P.*, Civ. No. 08-083, 2008 U.S. Dist. LEXIS 83315, at *63-65 (D. Ariz. Sept. 29, 2008).

There are of course other courts that have denied the equitable relief Judge Dickson ordered here. The did so, however, as a matter of equitable discretion—not because they thought they were prohibited from providing such relief. *E.g., Bitner v. Wyndham Vacation Resorts*, 301 F.R.D. 354, 363-64 (W.D. Wis. 2014); *Perez v. Comcast*, No. 10-1127, 2011 U.S. Dist. LEXIS 136953, at *7-8 (N.D. Ill. Nov. 29, 2013); *Vargas v. Gen. Nutrition Ctrs., Inc.*, Civ. No. 2:10-867, 2012 U.S. Dist. LEXIS 154073, at *11-26 (W.D. Pa. Oct. 26, 2012); *Titchenell v. Apria Healthcare, Inc.*, Civ. Act. No. 11-563, 2012 U.S. Dist. LEXIS 12759, at *18-25 (E.D. Pa. Aug. 29, 2012); *Hinterberger v.*

neither the text nor the policy of the FLSA prohibited the Magistrate Judge from providing such equitable relief.[6]

### 2. *Ornelas v. Hooper Holmes*

Scotts next attacks Judge Dickson's reliance on *Ornelas v. Hooper Holmes, Inc.*, No. 12cv3106, 2014 WL 7051868 at *4 (D.N.J. Dec. 12, 2014) (affirming and adopting Report & Recommendation of Magistrate Judge Douglas E. Arpert, dated August 1, 2014, attached to the opinion at *5–*11), both as to the substantive standards for equitable tolling and the issue of plaintiffs' diligence.

#### i. The *Ornelas* case

In *Ornelas*, District Judge Pisano (adopting the reasoning of Magistrate Judge Arpert) tolled the FLSA statute of limitations for the period that a motion for conditional certification was *sub judice*. As a matter of law, Scotts says, *Ornelas* applied the wrong equitable tolling standard, and thus so did Judge Dickson.

*Ornelas* involved issues that were similar to, if not the same as, those presented here. (ECF No. 64, p. 4-10) There, Judge Pisano ruled that "whether this is an 'extraordinary circumstance' as provided for by extra-jurisdictional case law or in the 'interests of justice' as permitted by the Third Circuit," the plaintiffs had demonstrated that the Court's two-year delay in deciding a motion for conditional certification was sufficient to trigger equitable tolling relief. *Ornelas* at *4. Recognizing the soundness of that reasoning, Judge Dickson likewise found no "reason to rule contrary to the Court['s] holding in

---

*Catholic Health Sys.*, Civ. No. 08-380S, 2009 U.S. Dist. 97944, at *43-49 (W.D.N.Y. Oct. 21, 2009); *Woodward*, 250 F.R.D. at 194.

[6] Scotts bookends its policy argument with the assertion that Judge Dickson's order "in practical effect compels routine tolling in FLSA actions whenever and for the entire time period a motion for conditional certification is pending." (Def. Br. 5) Even setting aside the fact that trial-level decisions do not "compel" other courts to do the same, this is hyperbole. Equitable tolling will be applied only when the circumstances suggest to a reviewing court that it is appropriate.

8

Ornelas, especially given the similarities [between Ornelas and this case] in every other respect." (Dickson Op. 6-7 (quoting Ornelas)). That ruling was plainly correct, in my view, and that view has case law support. See, e.g., Oshiver, 38 F.3d at 1387; Seitzinger, 165 F.3d at 242.

### ii. Period of *sub judice* delay

The basis for Judge Dickson's ruling seems clear enough. To remove doubt, however, for the reasons stated below, I concur that the conditional certification motion's *sub judice* status was a circumstance that warranted equitable tolling of the statute of limitations under the circumstances of this case.

The delay in this case was, in round figures, a year. The delay in Ornelas, calculated on the same basis, was about two years. Calculated from the date that the motion was fully briefed, however, the Ornelas delay was eighteen months. Scotts seizes on Judge Dickson's use of the eighteen month figure in stating that the discrepancy between that case and this was six months. (Dickson Op. at 7)[7] Judge Dickson thus erred, says Scott, because an apples-to-apples comparison of the two delays yields a discrepancy of not six months but one year, and the extraordinary two-year delay in Ornelas distinguishes that case from the "garden variety" one-year delay that happened here.

I do not read so much into Judge Dickson's six-month reference. Judge Dickson was well aware that the Ornelas delay, if calculated from the date of filing of the motion, was two-years. See Dickson Op. at 6 (two separate references to two-year pendency of motion in Ornelas). In this case, about a year elapsed from the time the motion for conditional certification was filed until the date I decided it. For a relatively time-sensitive motion preliminary to the merits, neither a two-year nor a one-year delay is ideal. I say that for a

---

[7]   In Ornelas, the tolling period at issue ran from the completion of briefing on the motion, not from the filing of the motion.

9

particular reason. The statute of limitations here is generally a relatively short two years. To be sure, two years of delay, as in *Ornelas*, could eat up the entire limitations period. But even the loss of one year (plus whatever time had elapsed before the action was filed) has the potential to gravely prejudice the absent opt-ins' rights.

In short, Judge Dickson's reliance on *Ornelas* was not misplaced simply because that case involved a delay that was longer (whether longer by six months or by a year). I join in his reasoned judgment that the one-year delay in this case, like the delay in *Ornelas*, was long enough to prejudice absent parties' rights under this relatively short statute of limitations.

### iii. Plaintiffs' diligence

Scotts also argues that *Ornelas* is distinguishable because those plaintiffs were more diligent than the parties here. By this, Scotts means a number of things.

Scotts notes that the *Ornelas* plaintiffs raised the issue of tolling immediately, "in connection with a pre-trial scheduling conference and secured an agreed tolling order before even moving for conditional certification." (Pl. Br. 7) Scotts thus faults named plaintiffs here for not seeking tolling at the initial conferences. The parties have engaged in a lively dispute over who said what in the initial conferences in this case. (*See* Def. Br. 7, 10-11; Pl. Oppo. 6-7; Def. Reply 4-5) I am not now in a position to evaluate these conferences from two years ago; indeed, the person in the best position to do so was Judge Dickson. At any rate, that named plaintiffs might have raised the issue earlier does not change my view as to the equities vis-à-vis the absent opt-ins.[8]

Scotts also argues that the opt-ins themselves could have been more diligent, either (1) opting in before receiving notice or (2) bringing their

---

[8]   Scotts' argument that plaintiffs should have obtained a tolling order sooner is in some tension with their other argument: that such an order would not have been appropriate until there had been an extraordinary delay in the neighborhood of two years, as in *Ornelas*.

10

own lawsuits. Scotts notes that five plaintiffs learned they possessed claims and opted into this lawsuit prior to the motion for conditional certification. *See Bitner v. Wyndym Vacation Resorts, Inc.*, 301 F.R.D. 354, 363-64 (W.D. Wisc. 2014); *see also Ruehl v. Viacom*, 500 F.3d 375, 384 (3d Cir. 2007) (noting, in the context of an *individual claim* brought under the Age Discrimination in Employment Act, that "equitable tolling requires the plaintiffs to demonstrate that he or she could not, by the exercise of reasonable diligence, have discovered essential information bearing on her claim"). Even if the necessary facts were available to me, I would decline to do a plaintiff-by-plaintiff equitable tolling analysis as to the 5 pre-notice opt-ins or the 101 post-notice opt-ins. The disparity between those numbers suggests that notice was both desirable and efficacious. And the response to the notice confirms the benefits and efficiencies of collective action under FLSA, which I am reluctant to undermine by putting the burden on potential class members to act individually.

On the subject of notice, Scotts complains, in effect, that plaintiffs did not press Scotts hard enough for information. While plaintiffs secured in discovery the names and dates of employment of potential class members, Scotts says they should have compelled Scotts to turn over their addresses or other contact information. (Def. Br. 9) But Scotts does not argue that plaintiffs lacked sufficient information to contact members of the putative class with the information they had. More generally, I agree with Judge Dickson that plaintiffs here did not sit on the rights of the opt-ins while the motion for conditional certification was pending.

Viewing the case as a whole, the picture that emerges is a case delayed somewhat by unavoidable transfers among district judges and magistrate; an early three month delay at Scotts' request; commencement of pre-certification discovery without any evident dilatory conduct; the prompt filing of a motion for conditional certification two months after the close of that discovery; and, nine months later, the plaintiffs' filing of a motion for equitable tolling as the statute of limitations loomed. Nothing about that procedural

11

history suggests that plaintiffs have prosecuted this case with a lack of diligence or without an eye towards protecting the rights of the opt-in plaintiffs. I therefore decline to reverse Judge Dickson's opinion on that basis. [9]

I view the matter from the opt-ins' point of view. As the motion remained *sub judice* before me, they had not received notice, for reasons perhaps attributable to plaintiffs, Scotts, or me, but anyway having nothing to do with them. From their point of view, allocation of fault for the delay among the named plaintiffs, Scotts, and the court is simply irrelevant. As it happens, a substantial part of the delay in the motion's hitting the court's decision calendar resulted from plaintiffs' need to refile certain exhibits; thereafter, some seven months passed before I granted the certification motion; but *no* part of the delay is attributable to the potential opt-in plaintiffs, who had not received notice of this lawsuit but nevertheless were in jeopardy of losing their claims.

### 3. Tolling Period

Scotts' last, backup argument concerns the particular tolling period ordered by Judge Dickson, which Scotts considers to be arbitrary. The argument goes as follows: a decision on a motion cannot be "delayed" as of the date the motion was filed; it is not yet ripe for decision. So, Scotts says, tolling the opt-ins' claims from then—as opposed to, for example, the motion's return date—is unduly generous.[10]

---

[9] I do not accept Scotts' contention that Judge Dickson improperly accepted at face value the plaintiffs' representations about the diligence with which they prosecuted this case. Judge Dickson recited the appropriate equitable tolling standard and discussed plaintiffs' diligence (although in the context of this case's similarities to *Ornelas*) in his opinion. (Dickinson Op. 4, 5-7). And for my own account, I state in this Opinion the reasons for concluding that the delay in this case was an extraordinary circumstance; that plaintiffs diligently pursued the opt-ins' rights; and that the absent, innocent opt-ins were entitled to equitable relief.

[10] Scotts also takes issue with the ten days that Judge Dickson added to the end of the tolling period. Those days were added, plaintiffs explain, in order to allow some time for the parties to prepare and send notice to the potential opt-ins in the event that I granted the motion for conditional certification. (At the time plaintiffs filed their

12

To begin with, Scotts' argument, whatever its merits, is not one that it made to Judge Dickson. Scotts instead took the maximalist position that no period of tolling was appropriate. That strategic choice had the virtues of clarity and a clear upside, but it also left Scotts vulnerable in the event plaintiffs prevailed. I cannot find any error in Judge Dickson's failure to anticipate Scotts' now-preferred, second-best solution *sua sponte.*

Even on the merits, though, I cannot find any error, whether under a plenary, abuse of discretion, or clearly erroneous standard. Judge Dickson's choice of a tolling period retroactive to the filing of the motion for conditional certification was a permissible one. That period is designed simply to allow for the conditional certification process as a whole—which, after all, is a precondition to sending notice and adding opt-ins—to play itself out. *See, e.g. Iriate,* 2015 U.S. Dist. LEXIS 166945, at *17-18 (tolling as of the filing of a motion for conditional certification to the date on which notice was sent to the potential opt-in plaintiffs); *Jackson,* 298 F.R.D. at 170-71 (tolling as of the filing of a motion for conditional certification); *McGlone,* 867 F. Supp. 2d at 445 (same) *Struck,* 931 F. Supp. 2d at 846-89 (tolling as of the filing of the motion for conditional certification to 60 days after notice was mailed to opt-ins).[11]

Although I will uphold Judge Dickson's Opinion and Order for the reasons stated above, I add that Scotts has not been prejudiced by the tolling period ordered. *Baldwin Cnty Welcome Ctr. v. Brown,* 466 U.S. 147, 151-52

---

motion for equitable tolling I had not yet decided the motion for conditional certification or authorized notice.) Although Scotts' argument has some force because notice had been sent to the potential opt-ins prior to Judge Dickson's opinion, Judge Dickson did not err in fashioning a tolling period that that would have accounted for the small window of time between when the motion was granted and when notice was approved. *See, e.g. Iriate,* 2015 U.S. Dist. LEXIS 166945, at *17-18; *Struck,* 931 F. Supp. 2d at 846-89. As it happened, I approved the form of notice two weeks after conditional certification was granted.

[11] *But see Gorey v. Manheim Servs. Corp.,* Civ. No. 7:10-1132, 2010 U.S. Dist. LEXIS 141868 (tolling beginning on the date that the motion for conditional certification was fully briefed); *Bergman v. Kindred Healthcare, Inc* , 949 F. Supp. 2d 852, 860 (N.D. Ill. 2013) (same).

(noting that "absence of prejudice is a factor to be considered in determining whether the doctrine of equitable tolling should apply once a factor that might justify it is identified"). Scotts has known from the moment it received the collective action complaint that the named plaintiffs were likely to be joined by others in claiming unpaid overtime. From its own records it could probably identify the likely claimants. Scotts stands today where it stood then. Judge Dickson's well-considered ruling merely affords the parties who are most affected and least responsible for the delay a fair shot at their day in court.

## IV. CONCLUSION

For the foregoing reasons, Scotts' appeal of Judge Dickson's Order granting equitable tolling is DENIED. (ECF No. 110) Judge Dickson's well-reasoned Opinion is affirmed and adopted by the Court.

Dated: January 20, 2017

                                                                  *[signature]*
                                                                  **KEVIN MCNULTY**
                                                                  **United States District Judge**