UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DOMINICK DEPALMA and JOSEPH
LESZCZYNSKI, Individually and on Behalf of
All other Similarly Situated Current and Former
Employees,

               Plaintiffs,

   v.

THE SCOTTS COMPANY LLC,

               Defendant.

2:13-CV-07740-KM-JAD

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
UNOPPOSED MOTION FOR APPROVAL OF THE SETTLEMENT OF THIS
COLLECTIVE ACTION**

Named Plaintiffs Dominick DePalma and Joseph Leszczynski, the Opt-In members of the

collective listed in Exhibit A to the Collective Action Settlement Agreement ("Collective

Members") and Defendant The Scotts Company, LLC ("Scotts") have agreed to settle this Fair

Labor Standards Act ("FLSA") collective action lawsuit per the accompanying "Collective

Action Settlement Agreement" ("Settlement Agreement"), attached at Exhibit A to the

Declaration of Jeffrey Klafter, submitted herewith ("Klafter Decl."), subject to Court approval.

Pursuant to the settlement set forth in the Settlement Agreement, Scotts has agreed to pay

$2,250,000.00, plus employer-side taxes associated with the wage portions of the settlement

payments, to settle this action. Plaintiffs and Collective Members are extremely pleased with this

settlement because the $2.25 million settlement represents an average benefit to the two named

plaintiffs and seventy-one Collective Members of approximately $31,000 per person (before

reduction for common benefit attorney fees and costs). Assuming Plaintiffs' request for

1

attorneys' fees and expenses are approved by the Court, the two named plaintiffs and the seventy-one Collective Members will receive on average approximately $16,000 per person.

Although the Third Circuit has not specifically addressed the issue, most judges agree that FLSA settlements must be judicially reviewed for fairness.  As discussed in this memorandum, judicial approval of the settlement is warranted in this case.

## A.  BACKGROUND

### 1.  The Sales Manager Position

Scotts is the leading producer and marketer of lawn and garden products in the United States. Scotts sells its lawn and garden products to its customers – large retailers like Lowe's, Home Depot, and Wal-Mart, and smaller hardware and garden centers like Ace Hardware – who in turn sell them to consumers.  Scotts employs Sales Managers ("SMs") who are each assigned a territory consisting of customer retailer stores in a specific geography.  SMs are paid on a salary basis and classified by Defendant as exempt under the FLSA.

### 2.  Contentions of the Parties and Litigation Risks

Plaintiffs and the Collective Members contend that Scotts SMs are misclassified as exempt because their job involves little to no supervisory or administrative work, but rather requires driving from retail store to retail store within their territories and personally moving and loading and organizing heavy bags of Scotts' products themselves. Plaintiffs and the Collective Members contend that this physical labor, which Scotts describes as "merchandising," comprises the vast majority of their time and is the most important work they perform.  Moreover, Plaintiffs and the Collective Members contend they routinely worked more than 40 hours per week as SMs. Therefore, Plaintiffs and the Collective Members contend that Scotts has violated the FLSA by failing to pay them overtime compensation for hours worked over 40 per week.  *See*

Klafter Decl, ¶1.

Scotts contends that no overtime was owed because SMs were properly classified exempt under FLSA's executive and administrative exemptions. *Id.* Scotts maintains that its SMs are properly classified as exempt from the overtime provisions of the FLSA because it contends that the SMs' primary duty is to manage their territory, to hire, supervise, and manage the hourly Merchandisers & Counselors ("M&Cs") that stock the shelves at retailer stores in the territory, and to establish relationships with the management of the retail stores that sell Scotts products, to market and increase sales of Scotts' product in those stores.

The issues of whether SMs were properly classified as exempt pursuant to the executive and administrative exemptions of the FLSA have been hotly contested during this litigation. Indeed, after the close of discovery, which included taking nearly 30 depositions at locations across the county, both parties filed motions for summary judgment on whether the SM position satisfies the FLSA exemption requirements as a matter of law. Klafter Decl.¶14. The Court denied both party's motions finding triable issues existed with respect to both the executive and administrative exemptions. *Id.* ¶15.

Under the FLSA's exemptions, Scotts has the burden of proving every element of the exemption. Specifically, with respect to the administrative exemption, 29 C.F.R. §541.200(a)(2) requires Defendant to prove that the employee's "primary duty" is the "performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers."

As this Court is familiar from the extensive summary judgment briefing, Plaintiffs and the Collective Members contended in their motion for summary judgment that Scotts cannot meet this burden, and that the evidence shows that SMs' "primary duty" is merchandising, which

involves significant physical labor to ensure that Scotts' lawn care products are properly

displayed in stores, according to pre-determined corporate plans. Indeed, Scotts' requirements

for its SM position include lifting and moving objects up to 60 pounds, climbing ladders,

reaching overhead and working outdoors in both heat and cold. Plaintiffs and the Collective

Members contend that they perform virtually no office work, and spend only a handful of hours

each week performing administrative work.

In support of its own summary judgment motion and in opposition to Plaintiffs' summary

judgment motion, Defendant argued that in fact the SM position is properly classified as exempt

under the administrative exemption because the primary duties of the position include managing

their territory, hiring, supervising, and managing the M&C's assigned to the retail stores in their

territory, building relationships with retail partners, and marketing Scotts' products and

increasing sales in their territory. SMs work their own hours, and are encouraged to treat their

territory as their "own business."  This Court found that there is a material dispute as to the

"primary duty" of SMs that will have to be tried. Opinion at 16-17.

The Court also denied Plaintiffs motion for summary judgment as to Scott's reliance on

the executive exemption finding a factual dispute as to whether the requirement that SMs

supervised two or more hourly employees for the requisite time to satisfy 29 C.F.R. § 541 have

been met.  Opinion at 13.  While Plaintiffs and Collective members are confident that they would

ultimately be able to demonstrate convincingly at trial that Scotts may not rely on the executive

exemption, they still face risks concerning the applicability of the administrative exemption.

Further, even if Plaintiffs and Collective Members prevailed with regard to the

administrative exemption, they also faced risks concerning the amount of a damage award.

First, the Court granted Defendant's motion that potential damages in this case should be

calculated according to the Fluctuating Work Week ("FWW") method.  Klafter Decl. ¶14.  The

FWW method yields damages that are about two-third's lower than the regular method under

which employees are entitled to receive time and one-half for every hour worked over 40 hours

per week.  *See* Opinion at 17.  Under the FWW method, damages are calculated pursuant to the

following formula (to which the parties have stipulated):

> that the weekly overtime backpay damages (if liability is established at trial)
> should be calculated as follows:  (weekly salary / weekly hours worked) x .5 x
> weekly overtime hours worked.

*See* Aug, 9, 2019 Letter to Magistrate Judge Dickson. Dkt. No. 228.  The number of weekly

hours worked by each Plaintiff and Collective Member, however, is disputed by the parties and

would have been subject to proof at trial.  The number of weekly hours determined by the jury

will could materially impact damages.  For example, if the jury were to agree with Plaintiffs and

Collective Member testimony that they worked an average of 15 overtime hours per week

throughout the calendar year (including significantly higher hours during the spring sales

season), the damages would be approximately $2.7 million, but if the jury were to agree with

Scotts that SMs' hours varied throughout the year and that SMs work very little (if any) overtime

outside of the spring sales season, the damages would have been materially less than the

settlement reached here.  *See* Klafter Decl 25.[1]

Therefore, absent this settlement, Plaintiffs and Collective Members would face

significant trial risk.  And while counsel for Plaintiffs has had success at trial in FLSA

misclassification suits, including one of the largest FLSA victories ever in this District, *Stillman*

*v. Staples*, in fact most FLSA trials have resulted in verdicts for the employers (Klafter Decl.,

---

[1] Collective Members also faced the risk of decertification of the collective and the need to try each of
their cases separately.  If the settlement was not agreed to, the next step in the litigation would have been
for Scotts to move for decertification and for Collective Members to move for final certification.
Collective Members believe they would likely prevail, but recognize there is a risk Scotts could prevail.

¶24). Plaintiffs and Collective Members therefore faced the real prospect of recovering nothing or far less than the value of the proposed settlement should litigation proceed.

### 3.  Settlement Negotiations

Several months after the Court's June 2019 rulings on summary judgment, the parties agreed to attempt to mediate and settle the case; this marked the second attempt at mediation. Klafter Decl. ¶¶17-19. The parties were optimistic that this mediation had better prospects that their first attempt for two reasons: unlike at the time of the first mediation before Magistrate Dickson, (1) the parties had the benefit of the parties respective briefs and the Court's rulings on their summary judgment motions and therefore had a full understanding of the strength of one another's respective legal positions and proofs; and (2) the parties had the benefit of the Court's ruling on the applicability of the FWW to this case, which drove the recoverable damages down significantly.

The parties held a full-day mediation in New York City with David Geronomus, Esq., of JAMS on December 19, 2019.  Klafter Decl. ¶19.  While the parties did not reach agreement that day, negotiations continued into January and an agreement in principal was finally reached on January 29, 2020 to settle the case for $2.25 million. *Id.* Pursuant to a joint request by the parties, on January 31, 2020, the Court entered an Order staying all deadlines in this case to allow the parties to prepare the settlement agreement and for Plaintiffs to submit their motion for approval and related settlement documents.

### 4.  The Basic Settlement Terms

Under the terms of the settlement, Scotts will pay a total of $2,250,000, plus employer-side taxes associated with the wage portion of the settlement payments. *See* Settlement Agreement, ¶3. Notably, Collective Members are not required to complete or return a claim form

in order to be paid (*Id.*).

The $2.25 million settlement provides an average benefit of approximately $31,000 (before reduction for common benefit attorney fees and costs) to the two Plaintiffs and seventy-one Collective Members.  Each Plaintiff's and Collective Member's individual settlement payment will depend on the number of weeks he/she worked as an SM during their respective relevant time period.  *See* definition of Settlement Share, Settlement Agreement at 5.  The relevant time period for each such person is three years prior to their commencing or joining the action (the FLSA statute of limitations] (plus March 20, 2015 through April 11, 2016 [the equitable tolling period ordered by the Court]) and any weeks worked as a Sales Manager after commencing or joining the action until Court approval of the settlement. The relevant period for each such person will be determined from Scotts' payroll records

### B.  ARGUMENT

#### 1.  Court Approval of FLSA Settlements Generally

Although the Third Circuit has not addressed the issue, Courts within this Circuit generally review FLSA settlements to ensure that they represent a "fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." *Brumley v. Camin Cargo Control, Inc.*, 2012 U.S. Dist. LEXIS 40599, *4-5 (D.N.J. March 26, 2012) (*quoting Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)); *see also Clarke v. Flik Int' Corp.*, 2020 U.S. Dist. LEXIS 26306, *5 (D.N.J. February 14, 2020) ("[a]lthough the Third Circuit has not adopted a standard for evaluating the settlement of a FLSA action, district courts in this Circuit have followed the guidance set forth by the Eleventh Circuit in *Lynn's Food Stores*….").

Following that guidance, an FLSA settlement will be approved if it: (1) resolves a *bona fide* dispute under the FLSA; (2) is fair and reasonable for the employee(s); and (3) furthers the

FLSA's implementation in the workplace.  *See Clarke,* 2020 U.S. Dist. LEXIS at \*5-7; *see also Gabrielyan v. S.O. Rose Apartments LLC*, 2015 U.S. Dist. LEXIS 135615 (D.N.J. Oct. 5, 2015).

Moreover, in analyzing these requirements, "a court must be mindful of the strong public policy in favor of settlements."  *Farris v. JC Penney Co., Inc.,* 176 F.3d 706, 711 (3d Cir. 1999); *see also Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-595 (3d Cir. 2010).

### 2.   Approval of the Settlement is Warranted

The proposed Settlement should be approved because, as discussed below, all of the relevant approval criteria are satisfied:

#### a.   The settlement resolves a *bona fide* FLSA dispute

In determining whether the settlement resolves a *bona fide* dispute, the Court must be assured that the settlement "reflect[s] a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching," and the *bona fide* dispute must be determined to be one over "factual issues" not "legal issues such as the statute's coverage or applicability." *Brumley*, 2012 U.S. Dist. LEXIS 40599 at \*6 (*quoting Lynn's Food*); *Davis v. Essex Cnty,* 2015 U.S. Dist. LEXIS 161285, \*5-6 (D.N.J December 1, 2015); *Dominguez v. Galaxy Recycling, Inc.*, 2017 U.S. Dist. LEXIS 88855, \*16-17 (D.N.J. June 9, 2017).

Here, there can be no question that the present settlement is a settlement of a *bona-fide* dispute. As discussed, both parties moved for summary judgment on whether Scotts' classification of SMs satisfied the FLSA's administration exemption requirements, and Plaintiffs moved for summary judgment on the applicability of the executive exemption.  Klafter Decl. ¶14. Each side's summary judgment motions were hotly contested.  The Court denied both motions, guaranteeing that the applicability of these exemptions would be settled at trial and

8

possible by the Third Circuit.  Klafter Decl..¶16. Thus, unambiguously, a *bona fide* dispute under

the FLSA still exists here, which this settlement would resolve.

### b.  The Settlement is "Fair and Reasonable"

In determining whether a proposed FLSA settlement is "fair and reasonable," judges of

this Circuit typically apply the Third Circuit's "*Girsh* factors."[2] *See, e.g., Dominguez*, 2017 U.S.

Dist. LEXIS 88855 at *6-11; *Brumley*, 2012 U.S. Dist. LEXIS 40599 at *13-16; *Clarke,* 2020

U.S. Dist. LEXIS 26306 at *6-8.

Analysis of the nine *Girsh* factors in this case strongly favors approval of the settlement:

*Girsh Factor 1 – Complexity, Expense and Likely Duration of the Litigation*:  This factor

favors approval. As detailed fully in the Klafter Declaration, not only has this litigation been

proceeding now for more than six years, with extensive motion practice, briefing, discovery,

dozens of depositions, and two mediations, but there is no prospect for quick resolution: absent

this settlement, the parties would move ahead with final certification/decertification briefing and

then, most likely, pre-trial briefing and a lengthy and expensive trial (that would itself be subject

to additional appeals).  Klafter Decl. ¶22.

*Girsh Factor 2 – Reaction of the Class to the Settlement*:  This factor also favors

approval.  The Plaintiffs support the settlement, and each Collective Member has been advised of

the settlement and invited to raise any comments or questions.  To date, none have been

received. Klafter Decl. ¶22.

*Girsh Factor 3 – Stage of the Proceedings and the Amount of Discovery Completed*:

---

[2]  The *Girsh* factors were adopted in *Girsh v. New America Fund, Inc.,* 521 F.2d 153, 157 (3d Cir. 1975), and are applied in the context of reviewing *class action* settlements, *see, e.g., In re NFL Players' Concussion Injury Litig.*, 307 F.R.D. 351 (E.D. Pa. 2015), *aff'd*, 821 F.3d 410 (3d Cir. 2016).

This factor – which addresses "whether counsel had an adequate appreciation of the merits of the case before negotiating," – *see In re Cendant Litig.,* 264 F.3d 201, 235 (3d Cir. 2001) – favors approval.  Here, the proposed settlement was the result of arms-length bargaining conducted after extensive second stage discovery and summary judgment briefing. The parties therefore not only had the benefit of a full record, but also their respective arguments from which each party could assess the strength of the other's respective legal positions and proofs.

       *Girsh Factors 4 and 5 – Risk of Establishing Liability and Proving Damages*:  These factors "examine the potential rewards (or downside) of the litigation had class counsel elected to litigate the claims rather than settle them." *In re: General Motors*, 55 F.3d 768, 814 (3d Cir. 1995).  As previously discussed, continued litigation would pose significant risk that the Plaintiffs and Collective Members might lose at trial and recover nothing or recover less than the value of the settlement even if successful. As such, these *Girsh* factors favor settlement.

       *Girsh Factor 6 – Risks of Maintaining the Class Through Trial*:  This factor favors approval. Absent settlement, Scotts would have moved to "decertify" the collective and, if this were successful, the claims of all Collective Members (but not Plaintiffs Mr. DePalma and Mr. Leszczynski) would be dismissed without prejudice.  *See Halle v. West Penn Allegheny Health Sys.*, 842 F.3d 215, 227 (3d Cir. 2016).  Although the undersigned counsel would seek to refile them, the advantages to trying the claims of all Collective Members based on representative testimony would be lost.  *See* Klafter Decl ¶24.

       *Girsh Factor 7 – Ability of Defendant to Withstand a Greater Judgment*:  This factor is deemed neutral where, as here, the risk of non-payment did not factor into plaintiffs' counsel's settlement analysis.  *See in re NFL Players Concussion Injury Litig*, 821 F.3d 410, 440 (3d Cir. 2016); *Tavares v. S-L Distribution Company, Inc.,* 2016 U.S. Dist. LEXIS 57689, \*33-34 (M.D.

Pa. May 2, 2016).

*Girsh Factors 8-9 – The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and the Attendant Risks of Litigation*:  These factors "test two sides of the same coin:  reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial."  *In re: Warfarin*, 391 F.3d 516, 538 (3d Cir. 2004).  The question is whether, in light of these risks, the settlement class is getting "good value."  *Id.*

These factors favor approval because the $2.25 million settlement is 83 percent of the maximum damage award of $2.7 million that could be obtained if Plaintiffs and Collective Members prevailed at trial.  Plaintiffs and Collective Members are therefore getting a good value in this case.  As already discussed, continued litigation would pose significant risk that they might recover nothing or less than the value of the settlement and any recovery after likely appeals would be years from now. On the other hand, settlement on these terms provides a benefit to each Plaintiff and Collective Member of $31,000, on average, inclusive of costs and fees.

*Summary of the Girsh Factors*:  To sum up, the *Girsh* factors strongly favor approval of the settlement.

### c.   The Settlement "Furthers the FLSA's implementation"

The proposed settlement does not frustrate the implementation of the FLSA. Indicia of a settlement that runs counter to the FLSA's purpose of protecting workers "include restrictive confidentiality clauses and overly broad release provisions." *Clarke,* 2020 U.S. Dist, LEXIS 26306 at *11; *see also Brumley*, 2012 US Dist. LEXIS 40599 at *2 (noting that settlements that place "constraints on employees beyond their full compensation under the FLSA" such as

barring FLSA plaintiffs from informing fellow employees of the result obtained diminish the

benefit to the plaintiffs and frustrate the FLSA's purpose); *Mabry v. Hildebrandt*, 2015 U.S. Dist.

LEXIS 112137, *2-3 (E.D. Pa. Aug. 24, 2015) (rejecting confidentiality provision in a settlement

of FLSA claims as "unnecessarily restrictive" and counter to the FLSA's purpose of correcting

imbalances of power and information between employers and their employees).

The Settlement Agreement before the Court does not include a confidentiality provision,

and the release which Collective Members will be giving in exchange for the payment by

Defendants is properly tailored to matters related to unpaid overtime compensation, including

but not limited to claims which were pled in this litigation and/or reasonably related to claims

that were pled in the litigation. Settlement Agreement, ¶4. The release applicable to Named

Plaintiffs Depalma and Leszczynski is a bit broader but still appropriate as that release is in

consideration of, and only if they are awarded a Service Award by the Court.

### 3. Plaintiffs' Counsel's Request for Attorneys' Fees and Reimbursement of Expenses Warrants the Court's Approval

Plaintiffs' counsel are seeking Court approval of $750,000 in attorneys' fees and

$310,492.47 as reimbursement of the expenses of Plaintiffs' counsel in prosecuting this litigation

and for the cost of administrating the settlement.  Under well-settled common fund

jurisprudence, the undersigned counsel are entitled to and seek a portion of the benefit obtained

as attorneys' fees and to reimburse them for their expenses in prosecuting this action.  Plaintiffs'

counsel have been prosecuting this action for over six years without any payment for their

attorneys' fees or reimbursement of their expenses.  Pursuant to the Settlement, Scotts has agreed

not to oppose a request for attorneys' fees of up to $750,000 (one-third of the benefit obtained)

plus reimbursement of expenses not to exceed $315,000.00 (inclusive of settlement

administrative expenses).  If the Court approves these amounts, and each Plaintiff's request for a

$7,500 Service Award, then $1,174,507.53 will be shared by Mr. DePalma, Mr. Leszczynski, and seventy-one Collective Members. The estimated net average settlement payment per Collective Member would be approximately $16,000.

Courts in this Circuit generally hold that attorney's fees paid in FLSA collective settlement must be approved for fairness pursuant to the "percentage-of-recovery method" and pursuant to the Third Circuit's *Gunter* factors.[3]  When calculating attorneys' fees in such cases in this Circuit, the percentage-of-recover method is favored "because it allows courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure." *In re Rite Aid Corp. Securities Litig.*, 396 F.3d 294, 300 (3d Cir. 2005); *Krell v. Prudential Ins. Co.*, 148 F.3d 283, 333 (3d Cir. 1998). Under the percentage-of-recovery method, "a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees*." In re Cendant Corp. Sec. Litig.,* 404 F. 3d 173, 187 (3d Cir. 2005)(citation omitted).

Here, the *Gunter* "percentage of the fund" factors – some of which overlap with the previously discussed *Girsh* factors – weigh in favor of approving the requested attorney's fee, which is 33.33% of the settlement fund, or $750,000:

*Gunter Factor 1 – Size of the Fund Created and the Number of Persons Benefited*:   This factor favors approval because the settlement enables the Collective Members to recover shortly after Court approval significant unpaid overtime wages.  This is among the largest individual average settlement payments Plaintiffs' counsel has obtained in the dozens of FLSA settlements

---

[3]  In *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 (3d Cir. 2000), the Third Circuit endorsed seven factors that guide the evaluation of attorney's fees in class action settlements.

to which they have been part – without facing the risk of a smaller recovery (or no recovery at all) at trial.

*Gunter Factor 2 – Presence or Absence of Substantial Objections by Members of the Class*:  This factor favors approval because, as already discussed, the Plaintiffs endorse the settlement and no questions or issues concerning the Settlement have been received from any Collective Member who have all been provided with notice of the settlement.

*Gunter Factor 3 – Skill and Efficiency of the Attorneys Involved*:  This factor favors approval because plaintiffs' counsel have extensive experience litigating cases under the FLSA and other wage statutes (*See* Firm Resumes of Klafter Olsen & Lesser LLP, attached as Exhibit C to the Klafter Decl.; Firm Resume of Pogust Milrood, attached as Exhibit C to the Declaration of Harris Pogust, submitted herewith).

*Gunter Factor 4 – Complexity and Duration of the Litigation*:  This factor favors approval because, as already discussed, this litigation involves complex and disputed factual issues, has been pending for over six years, and has required extensive analysis, discovery and extensive briefing on Plaintiffs' motion for conditional certification of the collective; Plaintiffs' motion for equitable tolling and the competing summary judgment motions..

*Gunter Factor 5 – Risk of Nonpayment*:  This factor favors approval because plaintiffs' counsel *exclusively* works on a pure contingency fee basis (Klafter Decl. at ¶29), making non-payment in the event of a loss at trial or on appeal a real risk.  *See In re Lucent Technologies, Inc.*, 327 F. Supp. 2d 426, 438 (D.N.J. 2004).

*Gunter Factor 6 – Amount of Time Devoted to the Case*:  This factor favors approval because plaintiffs' counsel collectively has dedicated 3,345.77 attorney, paralegal and law clerk hours to this litigation.  Klafter Decl., ¶30; Pogust Decl., ¶3.

*Gunter Factor 7 – Awards in Similar Cases*:   This factor favors approval because the requested one-third fee falls well within the range of fees approved by this Court in collective/class actions settlements arising under the FLSA and similar state wage statutes. "The Third Circuit has noted that fee awards generally range from 19% to 45% of the settlement fund when the percentage-of-recovery method is utilized to assess the reasonableness of requested attorneys' fees." *Brumley*, 2012 U.S. Dist. LEXIS 40599 at *36-37; *see also Lincoln Adventures LLC v. Those Certain Underwriters at Lloyd's, London Member*s, 2019 U.S. Dist. LEXIS 171917, *18 (D.N.J. Oct. 3, 2019) ("Courts in the Third Circuit, including this one, have viewed fee percentages of 33% as reasonable."); *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 155 (D.N.J. 2013) (approving 33% fee award in MDL 1663); *In re Liquid Aluminum Sulfate Antitrust Litig*, 2018 U.S. Dist. LEXIS 226311 (D.N.J. Dec. 3, 2018) (awarding attorney fee of one-third (plus expenses) in common fund of $10.7 million*); In re Merck & Co., Inc., Vytorin ERISA Litig.*, 2010 U.S. Dist. LEXIS 12344 (D.N.J. Feb. 9, 2010) (awarding attorney fee of one-third (plus expenses) in RICO common fund of $41.5 million); *Stoner v. CBA Info. Servs.*, 352 F.Supp.2d 549, 553 (E.D. Pa. 2005) ("most fees awarded in this court under the percentage-of-recovery method in settlements under $100 million have ranged from 15% to 40%").

*Summary of the Gunter Factors*:   In sum, all of the *Gunter* factors favor approval of the $750,000 attorney's fee.

*The Lodestar Crosscheck*:   Finally, some – but not all – judges reviewing an attorney's fee perform a "lodestar crosscheck" of a proposed attorney's fee award.  When performed, however, the cross-check "need entail neither mathematical precision nor bean-counting." *Rite Aid*, 396 F.3d at 306.  Moreover, lodestar multiples ranging from "one to four are frequently awarded in common fund cases when the lodestar method is applied." *Krell v. Prudential Ins.*

*Co..*, 148 F.3d 283, 314 (3d Cir. 1998).

Thus, in collective/class actions settlements arising under the FLSA and similar state wage statutes, this Court often approves lodestar multipliers falling within this range. *See, e.g. In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 165 (3d Cir. 2006) (awarding a multiplier of 1.28); *In re Safety Components Sec. Litig.*, 166 F. Supp.2d 72, 104 (D.N.J. 2001)(ruling a multiplier of 2.81 was reasonable); *Brown v. Progressions Behavioral Health Services, Inc.*, 2017 U.S. Dist. LEXIS 108487, *17-18 (E.D. Pa. July 13, 2017) (3.1 multiplier).

Here, the lodestar cross-check unambiguously confirms the reasonableness of the fees counsel seeks: based on the hours put into this case (which began more than six years ago), the $750,000 in attorney fees counsel seeks results in a *negative* lodestar multiplier (41%).  Klafter Decl., ¶34; Klafter Decl. Exhibit B; Pogust Decl. Exhibit A. In light of the quality of the settlement on behalf of the class, and the significant efforts made by counsel to attain that settlement, the fees counsel seek are fair and reasonable.

### 4.   Approval of the Expense Reimbursement Request and Request for Administrative Expenses by Plaintiffs' Counsel is Warranted

"Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *In re Datatec Systems,* 2007 U.S. Dist. LEXIS 87428 (D.N.J. Nov. 28, 2007), at *9 (quoting *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 519 (W.D. Pa. 2003) ("There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of… reasonable litigation expenses from that fund.").

Plaintiffs' Counsel requests reimbursement of expenses in the amount of $310,492.47 to cover costs associated with the investigation and filing of the case, discovery, travel, notice of

conditional certification and the opportunity to join the case, mediation, and the Settlement's

negotiation, meals, transportation, mailing, postage, and telephone, and the cost of settlement

administration. The specific amounts for each are set forth in Exhibit D to the Klafter

Declaration and Exhibit B to the Pogust Declaration. These expenses are reasonable given the

scope of this litigation to date, are documented on the books of Plaintiffs' Counsel, are

reasonable in relation to the Settlement Fund, and should be awarded. *Id*; *see, e.g., In re*

*Schering-Plough Corp. Secs. Litig.,* 2009 U.S. Dist. LEXIS 121173 at \*16 (D.N.J. Dec. 31,

2009) (approving $1,852,207.61 in expenses).

Also per the Agreement, a Third Party Administrator ("TPA) will distribute final

settlement payments to each Plaintiff and Collective Member. The Administrator will be RG2

Claims Administration LLC ("RG2").  RG2 has agreed to conduct the administration of the

Settlement for the fixed sum of $20,000.00.  Based on experience, this expense is reasonable and

lower than the typical range for such services. RG2 has and will continue to provide benefits to

the parties and the Court should approve payment of their anticipated expenses, which are

included in the expense request by Plaintiffs' counsel. *See Hegab v. Family Dollar Stores, Inc.*,

2015 U.S. Dist. LEXIS 28570, \*45 (D.N.J. Mar. 9, 2015) (approving request for payment of the

costs incurred and anticipated by the Claims Administrator in the amount of $38,150.00);

*Williams v. Sweet Home Healthcare, LLC*, 2018 U.S. Dist. LEXIS 191962, \*18 (E.D. Pa. Nov. 9,

2018) (approving fees for Claims Administrator in final settlement approval).

Together with Plaintiffs' counsel's request for reimbursement of expenses, the total

amount of expenses sought, $310,492.47, is less than the total expenses Scotts has agreed not to

oppose.

**5. Approval of the Requested Service Awards to Mr. DePalma and Mr. Leszczynski is Warranted**

17

Mr. DePalma and Mr. Leszczynski each seek a $7,500 Service Award to be paid from the

settlement fund.  Scotts has agreed not to oppose this request.  *See* Settlement Agreement, ¶7.  In

class/collective litigation, such payments "compensate named plaintiffs for the services they

provided and the risks they incurred during the course of class action litigation, and to reward the

public service of contributing to the enforcement of mandatory laws."  *Sullivan v. DB*

*Investments, Inc.*, 667 F.3d 273, 333 n.65 (3d Cir. 2011).  Service awards

> are particularly appropriate in the employment context.  In employment
> litigation, the plaintiff is often a former or current employee of the defendant,
> and thus, by lending his name to the litigation, he has, for the benefit of other
> present and former employees of the employer, undertaken the risk of adverse
> actions by the employer or co-workers. . . .  Although this Court has no reason
> to believe that [the defendant] has or will take retaliatory action towards either
> [Plaintiff] or any of the plaintiffs in this case, the fear of adverse consequences
> or lost opportunities cannot be dismissed as insincere or unfounded.

*Frank v. Eastman Kodak Co*., 228 F.R.D. 174, 187-188 (W.D.N.Y. 2005) (internal citations

omitted); *accord Myers v. Jani-King of Philadelphia, Inc.*, 2019 U.S. Dist. LEXIS 144929, *26

(E.D. Pa. Aug. 26, 2019).

Here, Mr. DePalma and Mr. Leszczynski have been especially diligent in pursuing this

collective litigation.  Both were essential in developing the case in the early stages, not only by

agreeing to "step up" and undertake to represent the collective members, but through responding

to discovery and appearing for depositions. Mr. DePalma and Mr. Leszczynski also participated

in information sessions with Plaintiffs' counsel, providing factual information relating to Scotts'

practices, procedures, and electronic systems, and assisted throughout the discovery and

litigation process.  Pogust Decl. ¶2.

In sum, these $7,500 service awards warrant approval.

## C.  CONCLUSION

For all the above reasons, Plaintiffs request that the Court grant this motion and approve

the settlement of this FLSA action and Plaintiffs counsel's request for attorney fees and

reimbursement of expenses (including the Settlement Administrator's agreed-upon charges), and

Service Awards.

Date: March 17th, 2020

Respectfully Submitted,

By: */s/* Seth R. Lesser
Seth R. Lesser
Jeffrey A. Klafter
Fran L. Rudich
Christopher M. Timmel
**KLAFTER OLSEN & LESSER LLP**
Two International Drive, Suite 350
Rye Brook, New York 10573
Telephone: (914) 934-9200
Fax: (914) 934-9220

Harris J. Pogust
Kara Hill
**POGUST MILLROOD, LLC**
Eight Tower Bridge, Suite 940
161 Washington Street
Conshohocken, PA 19428
Telephone: (610) 941-4204
Fax: (610) 941-4245

*Attorneys for Plaintiffs and the Collective*

## CERTIFICATE OF SERVICE

I hereby certify that on March 17th, 2020, I electronically filed the foregoing

Memorandum of Law in Support of Plaintiffs' Unopposed Motion For Approval of The

Settlement of This Collective Action was served upon Defendant's counsel on March 17th, 2020

via the ECF system and by email.


/s/ Seth R. Lesser